UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JIMMY H. CAUSEY, | ) | C/A No. 4:13-00581-TMC-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | Order and |
| vs. | ) | Report and Recommendation |
| | ) | |
| MICHAEL McCALL, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, Jimmy H. Causey (Petitioner/Causey), is currently incarcerated at Lee Correctional Institution. Petitioner appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on March 5, 2013. Respondent filed a motion for summary judgment on August 16, 2013, along with a return, supporting memorandum and exhibits. (Docs. #35-38). The undersigned issued an order filed August 19, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. (Doc. #39). Petitioner filed a response in opposition.

## ORDER

On October 17, 2013, Petitioner filed motions to amend his petition. (Doc. #47). Within this motion, Petitioner asserts that he "hereby waives (excluding the aforementioned) all other issues raised in the petition." No opposition was filed to this motion. In the motion, Petitioner proceeds on

_____

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02 (B)(2)(c), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

Grounds One, Four, Five and Six(a) of his original petition and adds an additional ground of cumulative effect of errors. (Doc. #52).[2] Therefore, the motion to amend is GRANTED, Petitioner has abandoned Grounds Two, Three, Six (b) and (c), and Seven raised in his original petition, and Grounds One, Four, Five, and Six(a) from the original petition and the additional cumulative error issue is addressed below.

## I.  PROCEDURAL HISTORY

The procedural history as set forth by the Respondent in his memorandum has not been seriously disputed by the Petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history, in part, as set forth by the Respondent.

Petitioner, Jimmy H. Causey, is presently confined in the Lee Correctional Institution of the South Carolina Department of Corrections (SCDC) serving his sentences in this case as well sentences, including life without the possibility of parole (LWOP), from other convictions in Richland County. Regarding the underlying conviction in this case, the Richland County Grand Jury indicted Petitioner on August 13, 2003, for one count of armed robbery; six counts of kidnapping; one count of grand larceny over $5,000.00; one count of burglary in the first degree; and one count of petit larceny. The Richland County Deputy Public Defenders Elizabeth Fielding Pringle and April Sampson represented Petitioner on these charges at trial.  Fifth Circuit Deputy Solicitors Kathryn Luck Campbell and Donald Sorenson prosecuted the case.

On April 21-25, 2003, Petitioner received a jury trial before the Honorable G. Thomas

---

[2] Petitioner filed a motion to amend on September 23, 2013, which contains the same allegations set forth in the motion to amend of October 17, 2013. Therefore, the first  motion to amend (doc. #47) is deemed moot.

Cooper, Jr. The jury found him guilty as charged. Judge Cooper sentenced him to concurrent sentences of thirty days for petit larceny; ten years for grand larceny; twenty years for each kidnapping conviction; twenty years for burglary in the first degree; and twenty years for armed robbery. (App. pp. 1-1403).

Petitioner timely served and filed a notice of appeal. Acting Deputy Chief Attorney Wanda P. Hagler, of the South Carolina Office of Appellate Defense, represented him on appeal. On April 2, 2004, Ms. Hagler filed an Initial *Anders* Brief of Appellant on Petitioner's behalf and petitioned to be relieved as counsel. (App. pp. 1602-11). The only issue raised in the *Anders* Brief was stated as follows:

> The lower court erred in denying appellant's motion to suppress state's witness Frankie Ferguson's identification in the case.

Final Brief of Appellant at p. 3, App. p. 1605.

Petitioner filed a *pro se* response to the *Anders* Brief on August 20, 2004. He presented the following issues *pro se*:

1.    Did the Lower Court err[ ] in denying the motion to exclude the cell phone records into evidence or granting a mistrial?

2.    Did the Lower Court err[ ] in allowing the state to use the wrong photo?

3.    Did the Lower Court err[ ] in denying a mistrial on the grounds that the state withheld exculpatory evidence?

4.    Did the Lower Court err[ ] in denying a motion a mistrial on grounds that the State asked defense witness had she visited me in jail?

On February 4, 2005, the South Carolina Court of Appeals filed an Opinion dismissing the appeal and granting counsel's petition to be relieved. *State v. Jimmy H. Causey #1*, 2005-UP- 081 (S.C. Ct.App., Feb. 4, 2005).  (App. pp. 1612-13). It sent the Remittitur to the Richland County

Clerk of Court on March 8, 2005.

Petitioner then filed a *pro se* Post-Conviction Relief (PCR) Application (2005-CP-40-06585)

on December 13, 2005. He alleged the following grounds for relief in his original application:

A.    Ineffective Assistance of counsel.

1.    Failed to raise alibi defense.

2.    Failed to call important fact witnesses.

3.    Failed to conduct pretrial investigation.

4.    Failed to request mistrial when victim admitted to friendship
with judge.

5.    Failed to request change of venue.

6.    Failed to request instruction on accomplice liability.

7.    Failed to object to improper vouching by prosecution.

8.    Failed to object to improper jury instruction.

B. Prosecution Misconduct.

1.    Repeated vouching for prosecution witnesses.

(App. pp. 1405-09). The State filed its Return on May 4, 2006. (App. pp. 1430-34). Through

appointed counsel, Charles T. Brooks, III, Esquire, Petitioner filed an Amended PCR Application

July 3, 2007. App. pp. 1410-24. At some point, however, Mr. Brooks was relieved and Wayne

Floyd, Esquire, was substituted as Petitioner's PCR counsel.

Petitioner, through Mr. Floyd, filed a 2nd Amended Application for PCR on December 2,

2009, in which he asserted the following claims:

1.    Petitioner's rights to due process of law, equal protection of the law, right to
a fair trial and fundamental fairness that is guaranteed by the Fifth and
Fourteenth Amendment of the United States Constitution, Article l Section

4

3 and Article I Section 14 of the South Carolina Constitution were violated when the Court seated the alternate juror in violation of South Carolina Code of Laws, §14-7-1340.

2.    Petitioner received ineffective assistance of trial counsel in the following matters:

    a.    failure to call Singmaster as a witness to support Petitioner's alibi;

    b.    failure to object to the Court's election process for the alternate juror; (115);

    c.    failure to object to Investigator McDonald's testimony that he had personal knowledge of Debbie Moore's telephone number and address; (775);

    d.    failure to object to Investigator McDonald's hearsay testimony of Amber Locke[]y in that Petitioner had left about 6:30 that morning with her car; (751);

    e.    failure to object to Investigator McDonald's testimony that a cell phone had called Ronnie Wilson the morning of the crime; (761);

    f.    failure to object to Investigator McDonald's hearsay testimony of the identity of Ronald Wilson's telephone number on three different occasions. (737, 762, 774)

3.    Petitioner received ineffective assistance of Appellate Counsel in the following particulars:

    a.    in failing to argue on appeal that the trial Courts admission over objection of the testimony of Investigator McDonald as to the identity of the owner of certain telephone numbers, Christine Wingard, Ronnie Wilson and Debbie Moore as said testimony was inadmissible hearsay; (735-738);

    b.    in failing to argue on appeal the Court denial of Motion to Exclude or for continuance because of the State's providing to the Defendant copies of cell phone records the day before trial in violation of the States obligation under Rule 5 of the Criminal Rules of Procedure; (30); [sic]

    c.    in failing to argue on appeal that the Court abused its discretion when it denied Petitioner's Motion for mistrial when the Prosecutor asked a witness if she visited Petitioner in jail in violation of the Court's Order *in Limine* as to

Petitioner's incarceration. (841).

4.     Prosecutorial misconduct for the following:

    a.     furnishing the Defense with cell phone records that were available from the date of Petitioner's arrest but not provided to the Defense until the day before trial; (13);

    b.     putting in false testimony as to whether or not any deal offers had been made to Dwayne Wilson; (501, 568, 569);

    c.     putting on false testimony as to whether or not any plea offers were made to Ron Causey; (624);

    d.     in asking witness Tonya Powell if she ever visited the Petitioner in jail violation of Courts Order *in Limine* as to any mention of Petitioner's incarceration. (841).

5.     That the effect of the aforementioned matters, individually and cumulatively were a violation of the Petitioner's constitutionally guaranteed rights to due process of law, equal protection of the law, right to fair trial and fundamental fairness as guaranteed by the fifth, sixth and fourteenth amendments to the United States Constitution and Article 1, Section 3, and Article 1, Section 14 of the South Carolina Constitution.

(App. pp. 1425-29).

The Honorable James R. Barber, III, held a hearing into the matter on December 3, 2009, at the Richland County Courthouse. Petitioner was present at the hearing, and Mr. Floyd represented him. Assistant Attorney General Brian T. Petrano represented the State. Petitioner testified on his own behalf. He also presented testimony from Elizabeth Fielding Pringle (lead trial counsel), Charles Dwayne Wilson (his co-defendant), and Ronald William. The State presented the testimony of second chair counsel, April Sampson. App. pp. 1435-1557. Judge Barber also had before him "the records of the Richland County Clerk of Court, the Record on Appeal (ROA) of the proceedings

against the Applicant, the Applicant's records from [SCDC], and the Remittitur, Decision, and Brief from the Applicant's direct appeal ." (App. p. 945).

On March 10, 2010, Judge Barber filed an Order of Dismissal (App. pp. 1583-1601), in which he denied relief and dismissed the Application with prejudice. Petitioner timely served and filed a notice of appeal. Assistant Appellate Defender LaNelle C. Durant represented him in collateral appellate proceedings. On October 21, 2010, Petitioner, through Ms. Durant, filed a Petition for Writ of Certiorari. The Petition for Writ of Certiorari listed the following claims in the Question Presented:

1.    Did the PCR court err in failing to find trial counsel ineffective for not calling Ms. Singmaster as an alibi witness when she would have been the only witness who was not biased as the other alibi witnesses worked for petitioner?

2.    Did the PCR court err in failing to find trial counsel ineffective for not objecting to the procedure used to select the alternate juror when the procedure violated S. C. Code Section 14-7-1340?

3.    Did the PCR court err in failing to find trial counsel ineffective for not continuing to object to the hearsay testimony by Investigator McDonald regarding the telephone records, the source of the calls, and the identity of the numbers?

4.    Did the PCR court err in failing to find appellate counsel ineffective for not appealing the trial court denying Causey's request for a continuance or motion to exclude the cell phone records which were provided to defense counsel two days before the trial began, and for not appealing the trial court's refusal to grant a mistrial after the Solicitor asked a witness if she visited Causey in jail in violation of the trial court's order ruling there would be no mention of that issue?

5.    Did the PCR court err in failing to find the state committed prosecutorial misconduct by not furnishing defense counsel the cell phone records until the Friday before the trial started on Monday when the records were available from the date of Causey s arrest; and for asking the state's witness, Tonya Powell, if she visited Causey in jail which violated the Court's order that no mention would be made of Causey's incarceration?

7

6.      Did the PCR court err in failing to find there was prejudice to petitioner from the cumulative effect of these multiple errors?

(Certiorari Petition, p. 2). The State filed a Return to Petition for Writ of Certiorari on January 5, 2010. The South Carolina Court of Appeals filed an Order denying certiorari on January 7, 2013. It sent the Remittitur to the Richland County Clerk of Court on January 23, 2013.

## II. HABEAS ALLEGATIONS

As discussed earlier, Petitioner amended his petition to limit his grounds for relief to Ground One, Ground Four, Ground Five, and Ground Six (a). Petitioner also set forth one additional ground entitled cumulative effect of combined errors. These grounds as raised by Petitioner in his *pro se* Petition for Writ of Habeas Corpus are as follows: [3]

**GROUND ONE:**        Prosecutorial Misconduct.

**GROUND FOUR:**      Abuse of discretion by trial judge.

**GROUND FIVE**:         Abuse of discretion by trial judge.

**GROUND SIX**:           Ineffective Assistance of Counsel.

**NEW GROUND**:        Cumulative Effect of Combined Errors

(Petition).

## III.  STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary

_____

[3] The numbers correspond to the numbers as set out in the original petition so as to correspond with the numbers as set out in the Respondent's memorandum.

judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. §

2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in the
> State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme]

Court's decisions but unreasonably applies that principle of law" to the facts of the case. *Humphries*

*v. Ozmint*, 397 F.3d 206, 216 (4th Cir. 2005) (*citing Williams v. Taylor*, 529 U.S. 362, 413 (2000)).

However, "an 'unreasonable application of federal law is different from an incorrect application of

federal law,' because an incorrect application of federal law is not, in all instances, objectively

unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's

adjudication of his claims was not only incorrect, but that it was objectively unreasonable." *McHone*

*v. Polk*, 392 F.3d 691, 719 (4th Cir. 2004). Further, factual findings "made by a State court shall

be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of

correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).


## IV. PROCEDURAL BAR

The United States Supreme Court has clearly stated that the procedural bypass of a

constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *Smith*

*v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if a state

9

has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above (i.e., direct appeal, appeal from PCR denial), and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

*Smith v. Murray*, 477 U.S. 533 (*quoting Wainwright v. Sykes*, 433 U.S. at 84 (1977)). *See also Engle v. Isaac*, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas Petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a Petitioner has failed to comply with state procedural requirements and cannot make the required showings of cause and prejudice, the federal courts generally decline to hear the claim. *See Murray v. Carrier*, 477 U.S.478, 496 (1986).

## V.  ANALYSIS

**Ground One**

In his amended habeas petition, Petitioner asserts prosecutorial misconduct based on an alleged *Brady* violation when the prosecution failed to disclose cell phone records to the defense until the Friday before the start of trial on Monday.[4] Petitioner argues that by doing so, counsel had virtually no time to investigate the cell phone records. Respondent asserts that although the ground is couched in terms of prosecutorial misconduct, it is "merely a complaint of state court evidentiary ruling, i.e., denial of a motion asserting a violation of Rule 5, SCRCrimP." Thus, Respondent asserts it does not state a cognizable claim under federal habeas review.

A claim of prosecutorial misconduct based on a *Brady* violation is reviewed to determine whether the conduct complained of so infected the trial with unfairness as to make the resulting conviction a denial of due process. *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir.2002). "To prevail on a claim of prosecutorial misconduct, a defendant must show (1) that the prosecutor's . . . . conduct [was], in fact, improper and (2) that such . . . conduct prejudiced the defendant to such an extent as to deprive the defendant of a fair trial." *United States v. Allen*, 491 F.3d 178, 190 (4th Cir.2007) (internal citations omitted). In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that a due process violation occurs when the prosecution suppresses evidence favorable to an accused that is material either to guilt or to punishment,

---

[4] To the extent Petitioner alleges a violation of Rule 5 of the South Carolina Rules of Criminal Procedure, the Court agrees his claim is not cognizable for federal review. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Accordingly, the Court cannot review a South Carolina court's ruling regarding the State's compliance with Rule 5 of the South Carolina Rules of Criminal Procedure.

11

irrespective of whether the prosecution acted in good faith.

Before the trial began, defense counsel made a motion to exclude cell phone records that were received by defense counsel from the State a few days before trial. Defense Counsel stated to the court as follows:

> There were some cell phone records received by me from Mr. Sorenson at about–I don't know the exact time–sometime between 4 and 4:30 on Friday. As you know, it was Good Friday which was Easter weekend.
>
> These cell phone records, just by way of explanation because I realize you're not as familiar as we are all with the facts of this case yet, but at the scene of the crime, this was a bank robbery out on Two Notch Road, at 9730 (sic) Two Notch Road, the NBSC Bank.
>
> The two individuals that robbed this bank attempted to flee the scene on a motorcycle, went down a railroad track that was behind the bank. Left at the scene on the railroad track near where a co-defendant, Dewayne Wilson, was apprehended and arrested was a duffel bag with basically items that were used in the commission of this bank robbery.
>
> Among those items was–I'm sorry, that's not correct. Those items were some distance rom Mr. Wilson but in the general area of where Mr. Wilson was apprehended on the railroad track.
>
> When Mr. Wilson was approached by the deputy he had in his hand a black cell phone. As they approached him they told him to drop whatever he had in his[sic] and he reached out and dropped it forward onto the ground. That black cell phone we have learned belonged to a Ron Causey. The cell phone was in his name.
>
> At the time of the apprehension of Dewayne Wilson they knew immediately, within 24 hours, the telephone number of that cell phone. Those are the records that were provided to me on Friday, the cell phone records on the cell phone that was found in Dewayne Wilson's hand on September 12th.
>
> ...Calls that were made that morning on that cell  phone; frankly. From that morning of September 12th that were made by presumably Dewayne Wilson or whoever had that cell phone in their possession.

12

> But this[sic] a phone that they had since September 12th. Of course they could have obtained those records at any time since September 12th. Mr. Sorenson tells me, and I certainly take him at his word, and I know that this is true, that he obtained those cell phone records on Friday. He told me that he got them ten minutes before he brought them to me.

(Tr. 14-15).

The State informed the court that the relevance of the cell phone was that Ronald Causey put the phone in the hands of the Petitioner the evening prior to the robbery. (Tr. 17). The State also informed the court that they had sent a subpoena to Nextel a couple of weeks prior to the trial and had not heard back from them. Upon double checking on the records the week before trial, the individual at Nextel, not in South Carolina, indicated he would Fed-Ex the records to the State and they received them that morning. (Tr. 19). The court asked the State if it was a critical piece of evidence, why did they not have it well before the day before trial. The State stated:

> Well, I mean, some of this had started coming up when we started investigating their alibi also when we talked to some of these witnesses who had indicated when they heard from him this morning and what they were doing. So, I mean, that kind of made some of this a little more probative, Your honor, at that point in time to follow up with it. And we didn't receive her alibi until a week ago.

(Tr. 20).

The Trial Judge ruled as follows:

> The phone records that you received, the State indicated, and I agreed that I would so rule, that they could use the cell phone records from September 12, 2002. There was a representation by the State that the only other cell phone records they wished to at least find out about, whether they offer them or not, is one phone call to one number that they have been unable to identify. And I haven't made a ruling on that. If it's a September 12th call, then they can use it, or at least—but you were objecting to all cell phone records for this phone, and I've excluded them all except September 12th or will exclude them all except September 12th. And I understand your concern, but the State

13

> has represented that there's no other pyramid of call that will go from
> the receiving call to other calls, to other calls, to other calls, to other
> calls, they've told you that's not what they plan to do.

(Tr. 31-32).

The PCR court found as follows with regard to this issue:

> Trial counsel testified that she did not object to the Solicitor's use of cell phone
> records that were only provided days before the trial. Trial counsel explained that
> while she objected to the use of the Nextel cell phone records, she did not later object
> concerning the manner in which they came out. Trial counsel testified that she does
> not know what she would have been seeking if she requested a continuance based on
> the close notice of the cell records.

(Tr. 1587).

The PCR court concluded as follows:

> . . . Regarding the cell phone records and whether they were not timely provided to
> the Applicant by the State, this Court finds the Applicant failed to satisfy his burden
> of proof that the trial court erred and/or that purported error was not harmless. The
> timeliness of the cell phone records was at issue during the trial. This Court finds that
> the Applicant failed to satisfy his burden of proof that the timeliness of the cell phone
> records was an abuse of discretion by the trial court. The gist of the timeliness
> explanation was that it was provided to the Applicant just before the trial because the
> State only received notice of intent to use an alibi defense shortly before the trial...

> As a threshold matter it is not clear how exactly the Applicant makes his
> prosecutorial misconduct claim. Meaning, it is not clear whether he is claiming trial
> counsel was ineffective for failing to object to purported prosecutorial misconduct
> or whether it is a distinct claim in itself as to why he is unlawfully in custody. This
> Court finds no merit to issues 4(a) [with regard to the cell phone records] and 4(c),
> those issues are addressed above and the Applicant has failed to satisfy the burden
> of proof and demonstrate the prosecutor(s) deliberately attempted to deceive a court
> and jurors by the presentation of known false evidence.

(Tr. 1597-1598).

Based on the record, Petitioner failed to carry his burden to establish a violation under *Brady*

and produced insufficient evidence to suggest prosecutorial misconduct. Clearly, Petitioner fails to

show the state court decision "was contrary to, or involved an unreasonable application of, clearly

14

established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2). Accordingly, it is recommended that summary judgment be granted for Respondent as to Ground One.

**Ground Four**

In Ground Four, Petitioner argues the trial judge abused his discretion by failing to suppress Ms. Frankie Ferguson's out-of-court eyewitness identification of Petitioner. Petitioner argues it was unduly suggestive. Respondent asserts that this allegation was litigated at trial and raised as the only issue in the *Anders* Brief. Respondent contends that the state court's rejection of this claim was not "contrary to" and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent under 2254(d)(1).

 At trial, Petitioner's counsel moved to suppress the identification by Ms. Frankie Ferguson of Petitioner at the scene of the bank robbery. (Tr. 72). Before the start of the trial and before Ms. Ferguson was allowed to testify at trial, an *in camera* hearing was held in which the *Neil v. Biggers* factors were considered by the court. (Tr. 72-97).

As explained in *United States v. Greene*, 704 F.3d 298 (4th Cir.2013),

> The Supreme Court has established a two-step process to determine whether identification testimony is admissible. *See Manson v. Brathwaite*, 432 U.S. 98, 110, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Satcher v. Pruett*, 126 F.3d 561, 566 (4th Cir.1997). "First, the court must consider whether the identification procedure is unnecessarily suggestive." *Satcher*, 126 F.3d at 566. "Second, if the procedure was unnecessarily suggestive, a court must look at several factors to determine if the identification testimony is nevertheless reliable under the totality of the circumstances." *Id*. Those factors were set out by the Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

15

*Greene*, 704 F.3d at 305.

In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1970), the Supreme Court held that the Due Process Clause requires the exclusion at trial of evidence of a pre-trial identification of a person if, based on the totality of the circumstances, the procedure used to obtain the identification was both (1) unnecessarily suggestive and (2) conducive to mistaken identification. *Neil,* 409 U.S. at 199–201. The Court further held that in determining the reliability of an identification, a court is to consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and confrontation. *Id.* The mere fact that there was a show-up identification does not mean that habeas relief is warranted; instead, the "central question[is] whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* at 198–99.

At the *in camera* hearing, Ms. Ferguson testified that the gunman had a mask on but she could see his eyes. She testified the gunman had a black knit cap and a stocking cap. She testified that from right above the individuals nose up until above his eyes was visible. Ferguson testified that she was made to lie on the floor of the bank and that the individual "was standing at the teller window and I was lying here and he was here, and I had a clear view because I was on the end of where the employees were lying on the floor." (Tr. 76). Ferguson also testified that she went into the vault with the individual and the individual stood at the gate pointing a gun at her. Ferguson testified that the lighting was clear, all the lights were on, and she was in the individual's presence for about five to seven minutes.  She gave the police a description of the person as being "five-eight,

16

five-nine, white male, thin built. I think at the time—I don't remember the age,, but I think I said

between 25 through 30. . . had on a blue shirt with dark colored pants, well, khaki pants. And he also

had on a black mask." (Tr. 77-78).  Ferguson testified that she looked at a photo lineup and the

Sergeant did not in any way suggest to her anyone to pick out. Ferguson testified that she picked out

photo number one and explained to the Court how she identified the photograph by testifying that

"I had two sheets of paper and I put one on the top and one on the bottom right around his eye line,

and that's how I remembered, based on his eyes." Thus, she identified the person as being the robber

and had no doubt in her mind that he was the robber. Petitioner's attorney cross-examined Ms.

Ferguson and the Court examined her. Ferguson explained to the court that the individual had a pair

of panty hose under the ski mask, and she could see where he split the eyes because the eye holes

were cut out of the ski mask, and she could see all of his eyes. (Tr. 95-97). After Ms. Ferguson

testified, Sgt. McDonald testified that he had gone to the bank and shown a photographic lineup to

all of the female witnesses, including Ms. Ferguson who picked out Petitioner after studying the

pictures and placing paper over parts of his hair and chin area. (Tr. 97-101).

      The Trial judge found that the line-up itself was not unduly suggestive but moved on to the

*Neil v. Biggers* factors. (Tr. 105).  The trial judge, Judge James Barber, concluded, *inter alia*,

> There are certainly some inconsistencies in the witness' testimony,
> but there is also a degree of certainty in Ms. Ferguson's testimony.
> All right. I'm going to deny your motion. I believe that the witness,
> Ms. Ferguson, had ample time to view the Defendant or the robber.
> She was —seems to be the one that was closest to him throughout the
> entire five to seven minutes of this experience. She said she has been
> in banking a long time and that she's trained to be observant. The
> only thing she could have possibly observed other than the physical
> stature of the robber was the only part of the body which seems to be
> have been exposed, and that was his eyes.
>
> She–I don't find that the line-up was unduly suggestive. It seems like

everybody always picks out No.1; but, nevertheless, there's no evidence that the line-up was suggestive. She said she used a method in reviewing the photo line-up before she made the identification whereby she shielded the remainder of the face, facial features from her identification process, blocked out other facial features and looked solely at the eyes on all six of the faces on the photo line-up.

She certainly had an opportunity to view the accused as she testified throughout the robbery. As I said, she seems to be the one that was most primarily involved with the robber which would indicate to me a fairly high degree of attention. There may not have been a prior description by this witness of –or the accuracy, whatever description she gave may not have been entirely accurate, and that may be the weakest prong of the test.

She certainly demonstrated both to the officer and here in court a level of certainty that leaves little question. And I don't think that the length of time, although time does have a way of blurring memories, but I don't find that the time of two weeks or ten days—I think it's probably two weeks– is such a great amount of time. Some of the case law indicates a much greater time length between identification and the actual crime. So I don't find that's a determining factor in and of itself.

I've got to–if I look at the Johnson case, the court talks about the totality of the circumstances, I find that the totality of the circumstances would allow the admissibility of the evidence. Now, as I said, it may be credibility problems, but those are issues for the jury and not for the Court.

(Tr. 110-112).

The trial court appropriately analyzed the issue under the standards of *Green* and *Neil v. Biggers* and, based on the totality of the circumstances, found that the identification was not suggestive and denied the motion to suppress.  The court of appeals reviewed and denied relief on this issue which was raised on appeal by brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967).  Petitioner's arguments fail to demonstrate that the state court unreasonably misapplied clearly established federal law or that its' decision "was based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceeding." *See* 28 USC §2254(d)(1).[5]

Therefore, it is recommended that summary judgment be granted as to Petitioner's Ground Four.


**Ground Five**

In Ground Five, Petitioner argues that the trial judge abused his discretion by failing to grant a continuance due to the State's late disclosure of cell phone records.  Respondent asserts this allegation does not state a claim that is cognizable in federal habeas because this allegation merely complains of a state court ruling on an issue of state law, i.e., the trial judge's refusal to either sanction a supposed violation of Rule 5, SCRCrimP, or to grant trial counsel's request for a continuance.

This claim challenges the efficacy of the trial judge's ruling on a matter of state law and is not cognizable in habeas review.  A state court's decision on a question of state law is binding in federal court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Thomas v. Davis, 192 F.3d 445, 449 n. 1 (4th Cir. 1999). Thus, it is recommended that summary judgment be granted for Respondent on Ground Five.

**Ground Six(a)**

In Ground six(a), Petitioner argues that trial counsel was ineffective for failing to object to the improper vouching by the Prosecutor of witness Wilson's testimony during closing argument. Respondent argues this issue is procedurally barred in that it was not presented in his state PCR and Petitioner cannot show cause and prejudice to overcome the default.

---

[5] Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

This claim of ineffective assistance of counsel was not raised in the PCR application and/or ruled upon by the PCR Court in its Order of Dismissal dated March 7, 2010. Even if, for the sake of argument, the issue was raised but not ruled upon, Petitioner failed to request a ruling pursuant to Rule 59(e), SCRCP.[6] Failure to do so results in a procedural bar. *Marlar v. State,* 375 S.C. 407, 653 S.E.2d 266 (S.C.2007).[7] Therefore, this claim is procedurally barred from review in federal habeas corpus. *See Plyler v. State,* 309 S.C. 408, 424 S.E.2d 477, 478 (S.C.1992) (holding that an issue that was neither raised at the PCR hearing nor ruled upon by the PCR court is procedurally barred). Petitioner has not demonstrated cause and prejudice for his procedural default of this claim.

To the extent Petitioner claims that Martinez v. Ryan, ⸺ U.S. ⸺, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012) allows him to overcome his procedural default, the claim fails. In *Martinez*, the Supreme Court established a "limited qualification" to the rule in *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), that any errors of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of a claim of ineffectiveness of trial counsel. Martinez, 132 S.Ct. at 1319. The *Martinez* Court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315. In describing its holding in *Martinez*,

---

[6] To avoid application of procedural bar to an issue raised but not ruled on by the PCR court as required by S.C. Code Ann. 17-27-80, a motion to alter or amend pursuant to Rule 59(e), SCRCP, must be made.

[7] In *Bostic v. Stevenson,* 589 F.3d 160, 162–65 (4th Cir.2009), the Fourth Circuit held that, prior to the decision of the South Carolina Supreme Court in *Marlar*, that South Carolina courts had not consistently enforced a procedural bar based on the PCR applicant's failure to file a motion pursuant to Rule 59(e). Therefore, for matters in which the PCR court ruled prior to *Marlar* (i.e., November 5, 2007), this Court should not consider the failure of the applicant to file a Rule 59(e) motion to obtain a ruling on a properly raised issue as a procedural bar. *See Mendenhall v. Cohen* 2011 WL 1119178 (D.S.C. 2011).

the Supreme Court has recently stated that

> [w]e ... read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. ——, ——, 133 S.Ct. 1911, 1918, 185 L.Ed.2d 1044 (2013) *(citing Martinez*, 132 S.Ct. at 1318–19, 1320–21); *see also Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir.2012) (summarizing the Martinez test to require the following: "a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under Strickland, whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether there is prejudice").

Therefore, to excuse the failure to raise the claim in his PCR proceeding that trial counsel was ineffective for not objecting to the State's vouching of Dewayne Wilson in the closing argument, Petitioner must "show that [PCR] counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter." Sexton, 679 F.3d at 1157; see also Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective assistance-of-counsel claims"); Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (stating to

demonstrate ineffective assistance of counsel, a petitioner must show that (1) counsel's errors were so serious that her performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) petitioner was prejudiced as a result).

Applying <u>Martinez</u> to the record and Petitioner's claim, Petitioner cannot make out a claim of ineffectiveness of PCR counsel. To provide context to the statement Petitioner is objecting to as vouching, the relevant portion of the Assistant Solicitor's closing argument was as follows:

> He gets back to the Sheriff's Department, was put in a room, has an investigator come in, about an hour later sits down, advises him of his rights, takes a statement from him. What does he tell the police? He tells them that man, his friend, his boss is his co-defendant.
>
> Now, Ladies and Gentlemen, I'm sure what's going through his mind at that point in time is, you know, I mean, I need to be as cooperative as I can possibly be because, you know, I'm in a lot of trouble at this point in time. It's not going to do him any good to start jerking them around, to start lying to them. What possible good would it do Dewayne Causey (sic) to tell them that Jimmy – I mean Dewayne Wilson – to tell them that Jimmy Causey is his co-defendant, robbed the bank with him, when for all he knows two offices down they've got the second robber sitting down there giving a statement also.
>
> What good does that do him? What good would it do him if it wasn't Jimmy Causey? I submit to you he's giving that statement because it's the truth. Because if they had the second robber, if the police had caught him running through that brickyard, it would have been Jimmy Causey sitting two offices down. It doesn't make any sense otherwise, I mean, why he would do that. I mean, what possible good would that do him if he's sitting trying to look out for himself knowing how much trouble he is in at that point in time?
>
> And, second of all, thinking back on it, not only what good would it do him? I mean, you had a chance to see him testify to judge his credibility. I mean, he is far from the sharpest nail there is. I mean, to think that that 20-year-old young man somehow in a split second when he doesn't have a whole lot of time, he went from being we just robbed a bank, we might be really, really rich; to, oh, my God, I'm in a lot of trouble.

> And for him to somehow get those wheels turning upstairs to know
> for some reason I'm going to blame this on a friend of mine; I mean,
> I don't know who he would be protecting. He's blaming it on a friend
> of his, his boss. So basically he wouldn't have a job then either. I
> mean, to think that he's going to think enough to blame it on him or
> also to be smart enough to realize I need to blame it on somebody
> that's left-handed, my God, blame it on somebody that looks like the
> real bank robber. It just doesn't make sense, Ladies and Gentlemen.
> The only thing that makes sense is it's him.

(Tr. 1337).

Applying *Martinez* to the record and Petitioner's claim, Petitioner has failed to prove a claim of ineffectiveness of PCR counsel. Petitioner has failed to prove that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney to the point where it was error that PCR counsel did not raise the issue.

"Vouching generally occurs when the prosecutor's actions are such that a jury could reasonably believe that the prosecutor was indicating a personal belief in the credibility of the witness." *United States v. Johnson*, 587 F.3d 625, 632 (4th Cir.2009) (citation and quotation marks omitted). "The rule against vouching exists because 'the prosecution's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.' " *Id. (quoting United States v. Young*, 470 U.S. 1, 18–19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). *See Young*, 470 U.S. at 18–19; *Johnson*, 587 F.3d at 632; *State v. Raffaldt*, 318 S.C. 110, 456 S.E.2d 390, 393 (S.C.1995) ("The solicitor has the right to give his version of the testimony and to comment on the weight to be given to the testimony of the defense witnesses. Therefore, although the State cannot 'pit' witnesses during questioning, it may comment on the credibility of the witnesses in argument."). Accordingly, Petitioner cannot show that counsel's failure to object to the statement was error, much less that it was objectively unreasonable such that

it rendered his performance deficient. However, even if the solicitor's argument was improper, Petitioner fails to carry his burden of proof to show a reasonable probability that the outcome of the trial would have been different if trial counsel had objected. Accordingly, Petitioner fails to establish that his underlying claim of ineffective assistance is "substantial." Therefore, it is recommended that Ground Six(a) be dismissed as procedurally barred.

**Cumulative errors**

Petitioner argues that the cumulative effect fo the errors raised was in violation of his rights to due process and warrants relief. Having found that none of the issues raised by Petitioner amounted to error, he cannot aggregate them to form a constitutional violation. *See Fisher v. Angelone*, 163 F.3d 835, 852-853 (1998), *cert.* denied, 526 U.S. 1035, 119 S.Ct. 1290, 143 L.Ed.2d 382 (1999) (holding that various claims of ineffective assistance of counsel, like claims of trial error, would not entitle petitioner to relief because a cumulative error analysis would apply only to the effect of those matters actually determined to be constitutional error and not the cumulative effect of all matters alleged or deemed deficient). Therefore, it is recommended that this ground be dismissed.

## VI.  CONCLUSION

Based on the foregoing, it is RECOMMENDED that Respondent's motion for summary judgment (docket entry #38) be GRANTED and the Petitioner's Petition for Writ of Habeas Corpus be denied, and the petition dismissed without an evidentiary hearing.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

November 25, 2013
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

25